WAYNE E. COPELAND, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Copeland v. Commissioner
Docket No. 4903-71.
United States Tax Court
T.C. Memo 1974-51; 1974 Tax Ct. Memo LEXIS 269; 33 T.C.M. (CCH) 246; T.C.M. (RIA) 74051; February 28, 1974, Filed Irving Graff, for the petitioner. Alan R. Herson, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent has determined a liability against the petitioner as transferee of the assets of National Technology, Inc., in the amount of $87,731.30 plus interest as provided by law on account of an income tax deficiency of the transferor for the taxable year ended November 30, 1966. The liability of the transferor is undisputed. The sole question is whether the petitioner is liable either at law or in equity as a transferee of property of National Technology, Inc., within the meaning of section 6901. [1]
*270 Some of the facts have been stipulated by the parties. Such facts and the exhibits attached thereto are incorporated herein by this reference. The legal residence of the petitioner at the time of the filing of the petition was Van Nuys, California. The U.S. Corporation Income Tax return of National Technology, Inc., for the taxable year ended November 30, 1966, was filed with the district director of internal revenue at Los Angeles, California. National Technology, Inc. (hereinafter referred to as the "transferor"), was incorporated under the laws of the State of California. Although authorized, no stock was ever issued. The petitioner was an incorporator and principal officer of the transferor. Pursuant to agreement dated June 26, 1968, between the transferor, its stockholders or beneficial owners, together with certain other interests, it was agreed that the assets, business and goodwill of the transferor would be sold to Omega Equities Corp., a Delaware Corporation, for a total consideration of $700,000, of which the sum of $530,000 would be paid on closing and the balance would be paid after December 31, 1968, and prior to January 31, 1969. The petitioner held *271 an interest equal to 65 percent of the stock of the transferor, subject to a claim by Bertha Mae Copeland, divorced wife of the petitioner, to 32.5 percent or one-half of the petitioner's share. The claim of Bertha Mae Copeland was predicated upon a final judgment of divorce, filed November 10, 1967, pursuant to which she was granted certain other property of the petitioner, alimony, child support, and said interest in the stock or business of the transferor. With respect thereto, the interlocutory decree, which was incorporated in the final decree provided as follows: 12. IT IS FURTHER ORDERED that with regard to the minimum ownership interest of 65% and/or minimum stock interest of 65%, if and when issued, jointly owned by plaintiff and defendant as to AETNA CHEMICAL CORPORATION doing business as NATIONAL TECHNOLOGY, INC., NATIONAL TECHNOLOGY, INC. and WESTERN TECHNOLOGY, INC. plaintiff is allocated, as her sole and separate property, one-half thereof, namely 32 1/2% in AETNA CHEMICAL CORPORATION doing business as NATIONAL TECHNOLOGY, INC., 32 1/2% in NATIONAL TECHNOLOGY, INC., and 32 1/2% WESTERN TECHNOLOGY, INC. and the defendant is allocated as his sole and separate property, *272 one-half thereof, namely 32 1/2% in AETNA CHEMICAL CORPORATION doing business as NATIONAL TECHNOLOGY, INC., 32 1/2% in NATIONAL TECHNOLOGY, INC., and 32 1/2% in WESTERN TECHNOLOGY, INC. IT IS FURTHER ORDERED that, with regard to the 35% interest and/or stock interest, or any part thereof, remaining as to each of said corporations, if the rights of one ROBERT J. HELLER, who claims an alleged 10% interest in and to each of said corporations, are adjudicated adversely to him, then his alleged 10% interest shall be divided equally between plaintiff and defendant; IT IS FURTHER ORDERED that if the rights of one JAMES H. MITCHELL, who claims an alleged 5% interest in and to each of said corporations are adjudicated adversely to him, then his alleged 5% interest shall be equally divided between plaintiff and defendant; IT IS FURTHER ORDERED that in the event MUTUAL EQUITY CAPITAL CORPORATION, its assigns or purchasers, do not exercise a stock option which it has to purchase 20% of the stock of both WESTERN TECHNOLOGY, INC. and AETNA CHEMICAL CORPORATION doing business as NATIONAL TECHNOLOGY, INC., or for any other reason does not become entitled to same, such interest of MUTUAL EQUITY *273 CAPITAL CORPORATION, its assigns or purchasers, shall be divided equally between the plaintiff and defendant. By reason of the hostility of his former wife, petitioner was concerned that she might be unwilling to enter into the agreement for the sale of his interest in the transferor. The petitioner was of the frame of mind that he wished to dispose of the business and be relieved on account of any further liabilities resulting therefrom so that he might receive an option to purchase stock in and an employment contract with Omega Equities Corp.Accordingly, with the direction and consent of the petitioner there was paid to Bertha Mae Copeland $207,500 of the total amount of $530,000 initially paid on account of the sale. Bertha Mae Copeland subsequently received an additional $10,000 from Omega Equities Corp. Except for the employment contract and an option to purchase 30,000 shares of stock of Omega Equities Corp., the petitioner received no consideration on account of the sale. The petitioner merely relinquished his right to receive any part of the cash payment to which he was otherwise entitled. The obligations of the petitioner pursuant to said final judgment of divorce *274 were not satisfied, reduced, or discharged on account of payment of the larger sum to Bertha Mae Copeland. Section 6901(a) provides for the assessment against "a transferee of property" on account of the liability "at law or in equity," which is imposed upon the transferee as a result of either an express agreement to assume the obligation of the transferor or an implied obligation either at law or in equity. Section 6901(a) does not impose any obligation where none exists either at law or in equity. ; . Furthermore, the burden of proving that such liability exists rests on the respondent. Section 6902(a). The insolvency of the transferor is not in question. The petitioner did, however, contend that the transaction constituted a transfer of stock rather than a sale by the transferor of its assets followed by a distribution of the purchase price to the parties in interest. We need not decide that question. In this case, the petitioner was entitled pursuant to the agreement with Omega Equities Corp., to receive in the first instance 65 percent of the consideration to *275 be paid for the business of the transferor. By reason of the decree of divorce, one-half of the petitioner's interest had been allotted to Bertha Mae Copeland, his divorced wife. This left the petitioner with a 32.5 percent interest. In order to obtain the consent of Bertha Mae Copeland to the sale, the petitioner was willing to surrender that interest. As a result, the petitioner neither actually nor constructively received any assets or property from the transferor. The respondent argues that the transaction should nevertheless be treated as if petitioner had received his pro rata share of the amounts paid to Bertha Mae Copeland, thereby charging the petitioner with the receipt of $108,750. In support of this, respondent's brief states: Petitioner agreed to this arrangement for several reasons. First, as he admitted in court, he owed money to Bertha Mae Copeland as a result of their divorce; this was a convenient way of extinguishing his personal liability. Additionally, petitioner needed Bertha Mae Copeland's consent so that the sale of assets could be completed. He wanted the sale to be completed so that he could receive a five-year employment contract from Omega, as *276 well as options to buy 30,000 shares of stock in Omega, each share worth from four to six dollars. Receipt by the petitioner of the employment contract from Omega Equities Corp., and the option to buy its stock, both of which proved worthless, in no way diminished the assets of the transferor. The fact that the petitioner was willing to give up any claim he might have in order that the sale might be completed does not make him a transferee either at law or in equity. His obligations under the decree of divorce not in any manner diminished on account of the payment to his divorced wife. Accordingly, the respondent has failed to establish that any property was received by the petitioner which would support the assessment of the transferee's liability. Decision will be entered for the petitioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩